**FILED**
Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia
**By cking at 11:52 am, Mar 23, 2010**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Waycross Division

| | | |
|---|---|---|
| IN RE: | ) | Chapter 13 Case |
| | ) | Number <u>09-50899</u> |
| TIMOTHY L. COFFIA | ) | |
| TERESA C. COFFIA | ) | |
| | ) | |
| Debtors | ) | |
| | ) | |
| | ) | |
| BRANCH BANKING & TRUST COMPANY | ) | |
| | ) | |
| Objecting Creditor | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TIMOTHY L. COFFIA | ) | |
| TERESA C. COFFIA | ) | |
| | ) | |
| Debtors | ) | |
| | ) | |
| and | ) | |
| | ) | |
| M. ELAINA MASSEY | ) | |
| | ) | |
| Chapter 13 Trustee | ) | |
| | ) | |
| Respondents | ) | |

**ORDER OVERRULING OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN**

This matter comes before me on the Objection to Confirmation of Plan ("Objection") filed by Creditor Branch Banking & Trust Company ("BB&T"). BB&T objects to the Debtors' plan on the basis that it provides for the surrender of real property in full satisfaction of BB&T's claim without providing BB&T recourse to

pursue any deficiency. Because the Debtors' plan only provides for surrender in full satisfaction of the secured claim of BB&T, BB&T is entitled to seek reconsideration of its claim in the event of an unsecured deficiency pursuant to 11 U.S.C. § 502(j). The Objection is overruled.

## BACKGROUND

On August 28, 2009, Debtors Timothy L. Coffia and Teresa C. Coffia filed a voluntary chapter 13 petition. On Schedule A of that petition the Debtors listed property located at 1204 Upland Avenue in Greeneville, Tennessee ("Property") with a then-current value of $190,000.00. (Dkt. No. 1 at 21.)

The Debtors' plan, filed on the same day as the petition, proposes to surrender the Property to both Wells Fargo Bank and BB&T "to satisfy the secured claim[s]" in full. (Dkt. No. 6, ¶ 6.) Wells Fargo holds a first deed of trust against the Property in the amount of $128,481.88 (Dkt. No. 46 at 2) and BB&T holds a second deed of trust against the Property in the amount of $82,802.25 (Dkt. No. 58 at 3). Both Wells Fargo and BB&T have been granted relief from the automatic stay of § 362(a) as to the Property. (See Dkt. Nos. 50, 62.)

On September 30, 2009, BB&T filed its Objection to the Debtors' proposed plan. (See Dkt. No. 23.) BB&T stated that the language in the proposed plan contemplating surrender of the

Property "in full satisfaction" of its claim might preclude BB&T from amending its claim to unsecured status in the event that Wells Fargo were to foreclose upon the Property securing its interest and thereby eliminate BB&T's second security interest position. (Dkt. No. 23 at 1-2.)

On December 15, 2009, a confirmation hearing was held including BB&T's Objection. Debtor Timothy L. Coffia testified that there was a potential buyer willing to purchase the Property for $217,000. There had been no closing, however, because the Debtors were unable to pay above the sale proceeds approximately $5,600 in payment arrearage and fees to the lienholders related to the Debtors' bankruptcy filing.[1] At the close of hearing, I found that, based on Mr. Coffia's testimony, the value of the Property was between $212,000 and $217,000 and the amount necessary to pay both lienholders was approximately $212,000. I took the matter under advisement and allowed the parties to submit briefs on the pertinent issues.

---

[1] The Debtors are above median income debtors as determined by 11 U.S.C. § 1325(b)(3) and their plan therefore commits all available disposable income to the payment of claims for 60 months. At confirmation hearing the Chapter 13 Trustee's analysis of the plan indicated that a 90% dividend would be paid on then-allowed unsecured claims. This analysis does not contemplate the allowance of a deficiency unsecured claim for BB&T.

3

## DISCUSSION

### I. The Debtors May Surrender the Property in Full Satisfaction of BB&T's Secured Claim Pursuant to 11 U.S.C. § 1325(a)(5)(C).

Section 1325(a)(5) of the Bankruptcy Code provides that a plan may be confirmed if, for each allowed secured claim, one of three possibilities occurs. See 11 U.S.C. § 1325(a)(5)(A-C).[2] One possibility is that the debtor surrenders the property securing the allowed secured claim to the claim holder. See 11 U.S.C. § 1325(a)(5)(C). When a debtor surrenders property, the surrender necessarily satisfies the allowed secured claim.

---

[2] 11 U.S.C. § 1325 states in pertinent part:
    (a) Except as provided in subsection (b), the court shall confirm a plan if—
        (5) with respect to each allowed secured claim provided for by the plan—
            (A) the holder of such claim has accepted the plan;
            (B)(i) the plan provides that—
                (I) the holder of such claim retain the lien securing such claim until the earlier of—
                    (aa) the payment of the underlying debt determined under nonbankruptcy law; or
                    (bb) discharge under section 1328; and
                (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
            (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
            (iii) if—
                (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
                (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
            (C) the debtor surrenders the property securing such claim to such holder . . . .

AO 72A
(Rev. 8/82)

Americredit Fin. Servs. Inc. v. Hickox (In re Hickox), 2008 WL 7390624, at *2 (Bankr. S.D. Ga. Feb. 22, 2008).

The Debtors' plan permissibly surrenders the Property to BB&T in full satisfaction of its secured claim. BB&T's objection rests in part upon a misreading of the Debtors' plan. The Debtors' plan proposes to surrender the Property in full satisfaction of BB&T's "secured claim" (Dkt. No. 6, ¶ 6), which happens automatically upon the surrender of property, In re Hickox, 2008 WL 7390624, at *2 ("Surrender of collateral necessarily satisfies an allowed secured claim."). Nothing in the language of the Debtors' plan suggests that the surrender is meant to satisfy BB&T's entire debt; if such language was included, then the plan could not be confirmed. See DaimlerChrysler Fin. Servs. Ams. LLC v. Barrett (In re Barrett), 543 F.3d 1239, 1247 (11th Cir. 2008).

BB&T's reliance on In re Barrett is misplaced. In In re Barrett, the Eleventh Circuit Court of Appeals held that the debtors' plan, which proposed surrender of a "910 vehicle"[3] in full satisfaction of a creditor's entire debt, could not be confirmed over objection because the creditor had a right to pursue an unsecured deficiency claim if such recourse was available under the parties' contract or applicable state law.

---

[3] A "910 vehicle" is a motor vehicle purchased for the personal use of the debtor within the 910 days before the bankruptcy filing and secured by a purchase money security interest. See 11 U.S.C. § 1325(a)(*) (the "hanging paragraph").

5

Id. at 1247. For the following two reasons, In re Barrett is distinguishable from the present case.

First, in In re Barrett the debtor's chapter 13 plan proposed to surrender a 910 vehicle in full satisfaction of the creditor's entire debt, thereby eliminating the possibility of a later deficiency claim. See id. at 1241. Here, the Debtors' plan does not preclude a deficiency claim; rather, it provides only that surrender is in full satisfaction of BB&T's secured claim. (Dkt. No. 6, ¶ 6.)

Second, the holding of In re Barrett was based upon the fact that the "hanging paragraph" of § 1325(a)(*) expressly precludes the application of § 506(a)[4] to 910 vehicles secured by purchase money security interests.[5] See In re Barrett, 543 F.3d at 1246-47. Because bifurcation under § 506(a) was not available, and because "state law determines rights and obligations when the

---

[4] 11 U.S.C. § 506(a)(1) states:
An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property . . . .

[5] 11 U.S.C. § 1325(a)(*) states:
For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

6

Bankruptcy Code does not provide a federal rule," id. at 1246 (citing Butner v. United States, 440 U.S. 48, 55 (1979)), it was necessary to "[l]eav[e] the parties to their contract, and look[] to applicable state law," id. Here, by contrast, surrender of real property is contemplated, and the issue involves claim allowance under § 502 rather than claim classification under § 506(a). See In re Hickox, 2008 WL 7390624, at *2. Therefore, because the Debtors' plan proposes surrender of the Property in full satisfaction only of BB&T's secured claim and does not limit BB&T's right to pursue a deficiency claim, the plan fulfills the requirements of § 1325(a)(5).[6]

### II. BB&T May Seek Reconsideration of its Claim as Unsecured Pursuant to 11 U.S.C. § 502(j).

Though the surrender of the collateral necessarily satisfies an allowed secured claim, it does not preclude a creditor from pursuing a deficiency claim. See In re Hickox, 2008 WL 7390624, at *2. As I held in In re Hickox, the Bankruptcy Code provides

---

[6] The Debtors' plan also fulfills the requirement of § 1325(a)(3) that the plan must have been "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). BB&T argues that the Debtors' plan violates that requirement because the plan is conditioned in a manner forbidden by law. (Dkt. No. 58 at 6.) Specifically, BB&T claims that because it has a right to pursue a deficiency claim under applicable nonbankruptcy law—Tennessee law—the Debtor is forbidden by law from proposing surrender in full satisfaction of BB&T's claim without allowing for a deficiency claim. As previously discussed, the Debtors' plan does not preclude BB&T from pursuing an unsecured claim. Therefore, the Debtors' plan complies with the requirements of § 1325(a)(3).

7

recourse for pursuing such a deficiency. Pursuant to § 502(j),[7] a creditor may seek to have its satisfied secured claim reconsidered and allowed as a general unsecured claim in the amount of the deficiency. Id. at *3. I have previously held that "[c]ause to reconsider [under § 502(j)] exists where the surrender fails to satisfy the pre-petition debt." Id.

In the present case, as in In re Hickox, the Debtors' plan does not preclude BB&T from seeking reconsideration of its secured claim pursuant to § 502(j) in the event of a deficiency. The Debtors' plan proposes to surrender the Property in full satisfaction of BB&T's secured claim, not in satisfaction of its debt. If some amount of the debt remains unpaid after BB&T disposes of the Property, BB&T may move for reconsideration of its claim under § 502(j) in order to have the unpaid portion of its debt treated as an unsecured claim. See 2008 WL 7390624, at *3.[8]

---

[7] 11 U.S.C. § 502(j) states in pertinent part:
    A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case. . . .

[8] To the extent that the Debtors argue that the Property could be surrendered in full satisfaction of BB&T's entire debt because there was enough value in the Property at the time of filing to satisfy the full amounts of both liens on the Property (see Dkt. No. 57 at 2-3), that argument fails. Under § 506(a), valuation of a secured claim is to be determined "in light of the purpose of the valuation and of the proposed disposition or use of such property." 11 U.S.C. § 506(a)(1). "When the collateral is surrendered, the allowed secured claim under § 506(a) is the value of the collateral at the time of surrender, and the secured claim is satisfied upon surrender." In re Amador, 2008 WL 1336962, at *4 (Bankr. S.D. Fla. Apr. 9, 2008).

8

BB&T's argument that a § 502(j) motion is not the appropriate remedy is without merit. First, BB&T argues that § 502(j) is inapplicable because its claim has not been allowed or disallowed. That argument ignores the fact that confirmation is the point at which a claim is deemed allowed or disallowed. See Baxter v. Sys. & Servs. Techs., Inc. (In re Dykes), 287 B.R. 298, 302 (Bankr. S.D. Ga. 2002). "[A]s the point of allowance determination, the confirmation triggers the application of section 502(j)'s reconsideration procedures." Id. (internal quotations omitted). Upon confirmation of the Debtors' plan, BB&T's claim will be deemed allowed and recourse via § 502(j) will be available to it if a deficiency later arises.

Likewise, BB&T's argument that "it makes little sense" to require it to utilize § 502(j) is unavailing. BB&T bases its argument on its assertion that "it is widely-recognized that creditors retain the right to file deficiency claims following the surrender of collateral and that creditors retain their rights under contract and state law following surrender of collateral." (See Dkt. No. 58 at 14.) BB&T is conflating the right to pursue a deficiency debt under applicable nonbankruptcy law into the right to file a separate deficiency claim in bankruptcy. Nonbankruptcy law does not provide for claim allowance in bankruptcy; rather, it provides the basis for determining debt which in turn is the basis for an allowed claim

9

under the Bankruptcy Code. In order to show that it is entitled to an unsecured deficiency claim in this case after the Property is surrendered, BB&T must show that an enforceable debt under applicable nonbankruptcy law remains.

Finally, BB&T has not cited any provision of the Bankruptcy Code that would require BB&T to assert any deficiency claim through a separate proof of claim as opposed to a motion for reconsideration pursuant to § 502(j). In this case, BB&T has filed a secured claim in the amount of $82,802.25, to which there has been no objection. Allowing BB&T to file a separate claim if some amount is not satisfied by the surrender of the Property would be unnecessarily duplicative. Rather, the allowed and satisfied secured claim should simply be reconsidered under § 502(j) in order to determine if a portion of the original claim should be allowed as based upon a remaining debt and unsecured. Therefore, I conclude that § 502(j) is the proper mechanism by which BB&T may seek to have its claim reconsidered in the event an enforceable deficiency debt is established under applicable nonbankruptcy law.

### III. The Debtors' Chapter 13 Plan Does Not Force BB&T to Elect its Treatment at Confirmation.

In support of its Objection, BB&T argues that the Debtors' plan forces it at confirmation to either foreclose its interest

AO 72A
(Rev. 8/82)

in the Property or abandon its lien and pursue an unsecured claim in violation of Tennessee law that allows for the election of remedies. (Dkt. No. 58 at 8-10.) Though BB&T is free to take either of the above two actions, it is not being forced to take either or any action at the time of confirmation. Rather, BB&T may also elect to wait for the senior lienholder to foreclose upon its collateral, after which BB&T could then seek to have the entirety of its claim reconsidered as an allowed unsecured claim pursuant to § 502(j). The Debtors' plan does not force BB&T to elect its treatment at confirmation.

## CONCLUSION

The Debtors' proposed chapter 13 plan meets the requirements for confirmation under 11 U.S.C. § 1325(a). Because BB&T is entitled to seek reconsideration of its claim pursuant to 11 U.S.C. § 502(j) in the event of a deficiency debt after disposition of the Property, BB&T's Objection is **ORDERED OVERRULED**. It is further **ORDERED** that the Debtors' chapter 13 plan be **CONFIRMED**.

JOHN S. DALIS
United States Bankruptcy Judge

Dated at Brunswick, Georgia,
this 22nd day of March, 2010.

11